*D. Moss*, for appellee.

## Fox *v.* Reynolds.

NEW TRIAL.—CUMULATIVE EVIDENCE.—Under our statute, a party to an action may testify in his own behalf, but he is not bound to resort to his own evidence, and may have a continuance for an absent disinterested witness to material facts, known to himself; but if he becomes a witness for himself, he stands as all other witnesses, except as to his credibility, and is not entitled to a new trial for newly discovered cumulative evidence of facts testified to by him on the trial.

APPEAL from the *Tippecanoe* Circuit Court.

GREGORY, J.—*Reynolds* sued *Fox* on two promissory notes; one for $3623 88, and the other for $2388 91, made by *Fox* to *J. L. Reynolds & Co.*, and by them assigned to the plaintiff below.

An answer in five paragraphs was filed. The fifth avers, substantially, that the parties had been in partnership for several years, under an oral agreement, and had large transactions in the purchase, packing and sale of pork, &c., at Lafayette, Indiana, of which a pretended statement had been made, on the basis of which, upon accounts wholly kept and rendered by *Reynolds*, the notes had been given; that the accounts as rendered were erroneous in large amounts, which are specified, for improper charges made by *Reynolds*, but which *Fox*, relying upon *Reynolds* to do right, did not examine, &c. Among the items which *Fox* alleged *Reynolds* had improperly charged, was $3000 for the use of his pork house, when it should have been $2000; and sundry sums of excessive interest, in all some $1500. That *Reynolds* had improperly

omitted to credit *Fox* $1000 per year for four years services in the pork packing business, which he had rendered for the firm, and $1000 for services in the cattle business, and $1500 for some partnership property sold and not accounted for by *Reynolds.* Reply: 1st, general denial; 2d, that all the matters and things therein contained were fully settled, and on such settlement being made, the notes, in plaintiff's complaint named, were given in consideration thereof. Issues of fact were joined, and the cause tried by a jury; verdict for the plaintiff for $2624 33; motion for a new trial on the ground of newly discovered evidence overruled, and appellant excepted. The evidence is in the record.

*Reynolds* was called as a witness by *Fox.* *Fox* testified as a witness on his own behalf. Among other things, he said: "About the time we were going into partnership, *Reynolds* met me at *Barbee's* corner, *Lafayette,* and asked me how I would like to go into partnership. He said he had bought the Mammoth Pork House, as it was called, at sheriff's sale. I think he was to charge $500 for the pork house all told. I told him my services would be worth $1000. I told him I had'nt much money; he said money could be raised. I told him I must have the whole control of the packing business; he then said go ahead, which I did. * * * * There was never any other conversation between me and *Reynolds* about the partnership."

The affidavits in support of the motion for a new trial are as follows:

"STATE OF INDIANA, TIPPECANOE COUNTY, ss:

*John L. Reynolds,*  }  *Tippecanoe* Circuit Court, October Term,
v.  }  1862.
*Jonathan Fox.*  }

*Noah Washburn,* a competent, disinterested witness, being duly sworn in open court, on his oath says, that in the year 1851, about the time that plaintiff and defendant were going into the business of packing pork in the city

of *Lafayette,* he, the said *Washburn,* was present at a conversation between the said parties, which took place on the side-walk near *Barbee's* corner, at the intersection of Columbia and Ohio streets, in said city; that in said conversation, the said plaintiff, *John L. Reynolds,* told *Fox* he had bought the Mammoth Pork House, and after some other conversation, *Reynolds* proposed to *Fox* to go into business with him in the packing business, and *Fox* inquired of *Reynolds* what rent he would charge for the pork house and packing establishment, and *Reynolds* replied that he would charge $500. *Fox* then replied that his services would be worth $1000 a year, and that he (*Fox*) must have the entire control and management of the business; to which *Reynolds* replied, " I will do it, and you may go on and fix up." Said *Washburn* further says he never disclosed to the said *Fox* that he had heard said conversation, until after supper time on the night of *Monday, November 3d,* 1862, after *Fox* had informed affiant that the jury in said cause had retired to consult of their verdict.

NOAH WASHBURN.

Subscribed and sworn to, in open court, *November* 5th, 1862.

W. R. ELLIS, *Clerk.*"

"*Jonathan Fox,* the above named defendant, being duly sworn in open court, on his oath says, that by his contract with the plaintiff, in relation to the pork packing business, before entering into that business, the said *John L. Reynolds* was to charge for the rent of the pork house only the sum of $500 per year, and he, the said defendant, was to be paid for his services for the partnership, the sum of $1000 per year; that up to the time the exhibits, accompanying the answer of said *Reynolds* to the interrogatories filed in this case by the said *Fox,* were filed, he was wholly ignorant of the fact that the said *Reynolds* had charged $1000 per year for the rent of the pork house, for three of the years of said partnership, and he was also wholly ignorant of the fact that said *Reynolds* had omitted

to give said *Fox* credit for his services, as he had contracted to do. And further, said affiant was wholly ignorant of the fact that *Noah Washburn*, or any other witness, was present and had heard the contract between the parties, until after the jury in said cause had been charged, and had retired to consult of their verdict, when he was informed by said *Washburn*, for the first time, that he was present and heard said contract. Said affiant has examined the foregoing affidavit of said *Washburn*, and says that the facts in reference to the conversation therein referred to, are, as he believes, true, and he can now prove said facts by said *Washburn*. Wherefore, the said *Fox* asks the court to grant him a new trial, on account of newly discovered evidence.

JONATHAN FOX.

Subscribed and sworn to, in open court, *November 5th,* 1864,

W. R. ELLIS, *Clerk.*

The circuit court overruled the motion, on the ground that the newly discovered evidence is merely *cumulative.*

It is urged by the counsel for the appellant, that the legislature having changed the law prohibiting parties from being examined as witnesses, it becomes necessary that this court should examine and determine whether such change does not require an exception to be made to the rule as to granting new trials for *cumulative* evidence, — the exception covering all cases where the only evidence given is that of the parties.

And it is claimed that the equity practice will justify this court in making such an exception.

In *Livingston* v. *Hubbs*, 3 Johns. Ch. Rep. 124, which was a bill for review in equity, CHANCELLOR KENT says: " The nature of the newly discovered evidence must be different from that of the mere accumulation of witnesses to a litigated fact. In *Taylor* v. *Sharp*, 3 P. Wms. 371, the Lord Chancellor spoke of such new matter as a receipt release, &c., and observed, that unless the relief was confined to such new matter, it might be used for vexation and

oppression, and for the cause never to be at rest; and in a case already referred to, Lord Eldon observed, that a party was not, indeed, bound to know every thing which he could have discovered; for instance, he might not be held bound to look into a box for instruments which no human prudence would have suggested. The language of these cases shows strongly the nature and strictness of the rule as to newly discovered proof."

In the case of *Head* v. *Head, Adm'r,* 3 Marshall's Ky. Rep. 112, the court say: "It is well settled that no review ought to be granted of a fact formerly in issue, on account of evidence newly discovered, unless that evidence be in writing or record, and does not consist in *swearing only. Respass, et al.* v. *M'Clanahan,* Hardin R. 342."

In the case of *Southard et al.* v. *Russell,* 16 Howard 547, Nelson, J., says: "The rule, as laid down by Chancellor Kent, 3 J. Ch. 124, is, that newly discovered evidence, which goes to impeach the character of witnesses examined in the original suit, or the discovery of cumulative witnesses to a litigated fact, is not sufficient. It must be different, and of a very decided and controlling character. 3 J. J. Marsh. 492; 6 Madd. 127; Story's Eq. Pl. § 413."

"The soundness of this rule is too apparent to require argument, for, if otherwise, there would scarcely be an end to litigation in chancery cases, and a temptation would be held out to tamper with witnesses for the purpose of supplying defects of proof in the original cause. A distinction has been taken where the newly discovered evidence is in writing, or matter of record. In such case, it is said, a review may be granted, notwithstanding the fact to which the evidence relates may have been in issue before; but otherwise, if the evidence rests in parol proof." 1 Dev. & Batt. 108, 110.

In the light of these authorities, we are forced to the conclusion that a bill for review in equity, for newly discovered evidence, could not be maintained on the ground disclosed in the affidavits of *Washburn* and *Fox.*

The rule at law is admitted by counsel to be against the appellant, but we are asked to make a new rule, or rather an exception to the old rule. There is no authority for this to be found in any of the states in which the same rule prevails as in this, as to the competency of the parties to a suit to testify in their own behalf; and we do not think reason and sound policy require of us to make such a ruling in the case in judgment.

We think the sound exposition of the statute is, that although "any person a party in the action *may* testify in his own behalf," he is not bound to resort to his own evidence, and may have a continuance for an absent disinterested witness to material facts, known to himself; but if he becomes a witness for himself, he stands as all other witnesses, except as to his credibility, and the same consequences flow therefrom, with such modifications as may arise from the credit to be given to him. Any other construction would enable a party to experiment by first offering himself as a witness, and then, in case the jury disbelieved him, look about with increased diligence for newly discovered *cumulative* evidence.

The case at bar does not commend itself very strongly to our favorable consideration. There is a great want of diligence on the part of *Fox;* he first allows important stipulations in his contract with *Reynolds,* involving thousands, to rest in parol; he does not seem to have retained a very clear recollection of them himself; he makes an important settlement, involving the same items, without examination; he executes his notes for a large balance found due against him, and he forgets the important fact that *Washburn,* a disinterested witness, was present when he made his contract.

To authorize a new trial under such circumstances, the newly discovered evidence ought to be very controlling in its character, and free from any legal objection.

The judgment below is affirmed, with two per cent. damages and costs.

*D. Turpie* and *Huff & Jones*, for appellant.
*D. Mace, W. C. Wilson, H. W. Chase* and *J. A. Wilstach*, for appellee.